CLERK'S OFFICE
A TRUE COPY
Sep 07, 2026
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search<br><br>for information about the location of the cellular telephone assigned call number (414) 870-3334, service provider is AT&T Mobility, more fully described in Attachment A | Case No. 26-MJ-482 (SCD) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the ______________ District of ______________________
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before 9-20-26 *(not to exceed 14 days)*

❐ in the daytime 6:00 a.m. to 10:00 p.m. ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to Stephen C. Dries, U.S. Magistrate Judge.
*(United States Magistrate Judge)*

❐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person, who, or whose property, will be searched or seized *(check the appropriate box)*

❐ for ____ days *(not to exceed 30)* ❐ until, the facts justifying, the later specific date of ______________.

Date and time issued: 9-6-26 3:50 pm

Stephen C. Dries
*Judge's signature*

City and state: Milwaukee, WI

Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

**Return**

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: ______________________

______________________________
*Executing officer's signature*

______________________________
*Printed name and title*

# ATTACHMENT A

## Property to Be Searched

1. Records and information associated with:

   - the cellular device assigned call number (414) 870-3334 (referred to herein and in Attachment B as **"Target Cell Phone 1"** or "**TCP-1**"), that is in the custody or control of AT&T Mobility (referred to herein and in Attachment B as the "Service Provider" or "Provider"), a wireless communications service provider that is headquartered at 11760 U.S. Highway 1, Suite 600, North Palm Beach, FL 33408.

2. Target Cell Phone 1.

## ATTACHMENT B

### Particular Things to be Seized

### I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a. The following subscriber and historical information about the customers or subscribers associated with **TCP-1** for the time period from September 4, 2026, to present:

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

   viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by **TCP-1**, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(B) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received).

b. Information associated with each communication to and from **TCP-1** for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which **TCP-1** or will connect at the beginning and end of each communication.

The Court has also issued an order(s) pursuant to 18 U.S.C. § 3123, dated today, for such information associated with **TCP-1**.

c. Information about the location of **TCP-1** for a period of **30 days**, during all times of day and night. "Information about the location of TCP-1" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of **TCP-1** on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of violations of 18 U.S.C. § 922(g) (felon in possession of a firearm) and 21 U.S.C. § 841(a)(1) (possession with intent to distribute a controlled substance) since September 4, 2026.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this warrant.

CLERK'S OFFICE
A TRUE COPY
Sep 07, 2026
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search

for information about the location of the cellular telephone assigned call number (414) 870-3334, service provider is AT&T, more fully described in Attachment A

Case No. 26-MJ-482 (SCD)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ________________ District of ________________________, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 922(g) | felon in possession of firearm |
| 21 U.S.C. 841(a)(1) | possession with intent to distribute controlled substances |

The application is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* ____________ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

[signature]
*Applicant's signature*

Police Officer Jonathon Newport, Milw. Police Dept.
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone *(specify reliable electronic means)*.

Date: 9-6-26

[signature]
*Judge's signature*

City and state: Milwaukee, WI

Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Jonathon Newport, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (414) 870-3334 ("**Target Cell Phone 1**" or "**TCP-1**"). **TCP-1** service provider is AT&T Mobility (the "Service Provider"), a wireless telephone service provider headquartered at 11760 U.S. Highway 1, Suite 600, North Palm Beach, FL 33408. **TCP-1** associated with OMAR J. BURKS (DOB: 03/02/1990). **TCP-1** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application(s) by the United States of America for an order(s) pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from **TCP-1**.

3. I am a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives (hereinafter "ATF"). As such, I am "an investigator or officer charged by the Attorney General with the duty of enforcing any of the criminal, seizure, or forfeiture provisions of the laws of the United States," within the meaning of Section 3051(a) of Title 18, United States Code; that

is, an officer of the United States who is empowered by law to conduct investigations of, execute warrants and to make arrests for offenses against the United States and offenses enumerated in United States Code Title 18 and Title 21. I have been a Task Force Officer with ATF since November of 2024, and am currently assigned to the Milwaukee Field Office, under the St. Paul Field Division.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. Throughout this affidavit, reference will be made to case agents. Case agents are those federal and state law enforcement officers who have directly participated in this investigation, and with whom I have had regular contact regarding this investigation. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 922(g) (felon in possession of firearm) and 21 U.S.C. § 841(a)(1) (possession with intent to distribute controlled substances) have been committed by BURKS. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations and will lead to the discovery of additional evidence of these offenses.

6. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

**PROBABLE CAUSE**

7. On 9/04/2026, at approximately 5:10PM, Milwaukee Police Officers stopped a blue

Nissan Altima after an officer observed that the driver had a handgun in his lap and that the vehicle was displaying a temporary tag that, upon a records check, did not come back to any vehicle.

8. During the stop, officers determined that the Altima was driven by BURKS. An officer asked BURKS "are there any firearms in the vehicle?" BURKS stated "no." A records check revealed that BURKS does not have a concealed carry license. Officers asked BURKS to exit the vehicle and conducted a probable cause search of him and the vehicle.

9. In the glove compartment, officers found a black over black Taurus G2C 9mm semi-automatic pistol with a magazine inserted containing 10 rounds and 1 round in the chamber.

10. Additionally, officers found in the glove box a small, clear fold-to-close sandwich bag containing various colorful pills. These pills were field tested positive for methamphetamine by officers using a mobile detect pouch multi drug test. They weighed a total of approximately 9.09 grams.

11. The reports of this arrest do not mention a cellular phone being inventoried into evidence. Case agents contacted the Milwaukee County Jail and confirmed that no cellular phone was listed in the inventory of BURKS' property. Based upon my training and experience and the investigation to date, I believe that BURKS may have had a cell phone on his person at the time of the police contact, but may have given the phone to another individual before being transported away from the scene by officers.

12. After his arrest, BURKS was transported to the Milwaukee Police Department. On September 6, 2026, he was detained at the Milwaukee County Criminal Justice Facility. While incarcerated, he made phone calls to other individuals.

13. During one of these calls, BURKS asked another individual to call his number, and he stated that the number was (414) 870-3334. Ultimately, they called another number and an

individual named "Diamond" answered. This is believed to be "Dyamond Harris," who BURKS described as his girlfriend in an earlier interview with law enforcement.

14. I am aware that BURKS was arrested by the Marquette University Police Department in April 2024 in connection with a carjacking that occurred on Marquette's campus. BURKS has been charged federally with that offense under case number 25-CR-1. A jury trial in that matter is scheduled to begin this coming Wednesday, September 9, 2026.

15. During that arrest, officers searched BURKS' vehicle and recovered a pouch containing a green leafy substance consistent with marijuana, a white powdery substance that field tested positive as cocaine and was later confirmed as cocaine by DEA laboratory testing, and a tan powder substance that field tested positive as fentanyl but later DEA testing determined to not be a controlled substance. During that arrest, officers also recovered a Smith & Wesson revolver from BURKS' vehicle.

16. In April 2024, officers also recovered an Apple iPhone when they arrested BURKS. Officers obtained a Wisconsin state warrant to search the information on that phone. During their review of the data on that phone, officers found text messages consistent with narcotics trafficking. For example, text messages in February of 2024 with a contact called "Twon" referenced possible purchases of "weed" and "hard." I know from my training and experience that "weed" can refer to marijuana and "hard" can refer to crack cocaine.

17. I also know from my training and experience that those who possess firearms and who traffic in narcotics often use cellular devices to facilitate or document their crimes. This can include by sending messages regarding trafficking or by photographing the firearms they possess. Based upon my training and experience, I am also aware that individuals involved in the illegal possession of firearms may take photographs with the firearms or of the firearms and the

individuals may take videos of their possession of firearms via cellular telephones

18. Case agents believe that monitoring of **TCP-1's** location will assist in identifying a place where the phone can be seized and searched, subject to legal process, for evidence of the crimes discussed herein.

**TECHNICAL BACKGROUND**

19. In my training and experience, I have learned that the Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

**Cell-Site Data**

20. Based on my training and experience, I know that the Service Provider can collect cell-site data on a prospective basis about **TCP-1**. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typicly determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the

duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

**E-911 Phase II / GPS Location Data**

21. I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of **TCP-1**, including by initiating a signal to determine the location of **TCP-1** on the Service Provider's network or with such other reference points as may be reasonably available.

**Pen-Trap Data**

22. Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an

Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content. At this time, investigators have not determined the IMIE and ESN associated with **TCP-1**.

**Subscriber Information**

23. Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify **TCP-1**'s user or users and may assist in the identification of co-conspirators.

**AUTHORIZATION REQUEST**

24. Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

25. I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

26. I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of **TCP-1** on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

27. Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate **TCP-1** outside of daytime hours.

## ATTACHMENT A

**Property to Be Searched**

1. Records and information associated with:

   - the cellular device assigned call number (414) 870-3334 (referred to herein and in Attachment B as **"Target Cell Phone 1"** or "**TCP-1**"), that is in the custody or control of AT&T Mobility (referred to herein and in Attachment B as the "Service Provider" or "Provider"), a wireless communications service provider that is headquartered at 11760 U.S. Highway 1, Suite 600, North Palm Beach, FL 33408.

2. Target Cell Phone 1.

## ATTACHMENT B

### Particular Things to be Seized

### I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a. The following subscriber and historical information about the customers or subscribers associated with **TCP-1** for the time period from September 4, 2026, to present:

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

   viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by **TCP-1**, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(B) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received).

b. Information associated with each communication to and from **TCP-1** for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which **TCP-1** or will connect at the beginning and end of each communication.

The Court has also issued an order(s) pursuant to 18 U.S.C. § 3123, dated today, for such information associated with **TCP-1**.

c. Information about the location of **TCP-1** for a period of **30 days**, during all times of day and night. "Information about the location of TCP-1" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of **TCP-1** on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of violations of 18 U.S.C. § 922(g) (felon in possession of a firearm) and 21 U.S.C. § 841(a)(1) (possession with intent to distribute a controlled substance) since September 4, 2026.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this warrant.